**STATE of Iowa, Plaintiff-Appellee,**

v.

**Vicki Jo NELSON,
Defendant-Appellant.**

No. 85–867.

Court of Appeals of Iowa.

Aug. 27, 1986.

Charles Harrington, Appellate Defender, and Deborah A. Goins, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and David C. Dorff, Asst. Atty. Gen.; Mark Lindholm, Asst. Co. Atty., for plaintiff-appellee.

Considered by OXBERGER, C.J., and SCHLEGEL, and SACKETT, JJ.

SACKETT, Judge.

Defendant Vicki Jo Nelson appeals from her conviction on two counts of possession of a controlled substance in violation of Iowa Code § 204.401(3) (1985). Defendant contends the trial court erred in refusing to compel disclosure of the identity of the confidential informant who supplied a police officer with information which was a basis for a subsequent search warrant for defendant and her residence.

On February 12, 1985, Marshalltown Police Lieutenant David Joswiak received information from Detective Theoharris Ka-

matchus that Dilauded, a schedule II controlled substance, was being shipped through the mail to defendant's residence in Marshalltown. Kamatchus received the information from a confidential informant that the substance was being shipped to defendant on a regular basis from Dennis Paglia of Zion, Arkansas.

A mail monitor was initiated. On March 15, 1985, the U.S. Postal Service notified Joswiak that a letter was received by the postal service addressed to defendant with a postmark of March 12, 1985, from Sage, Arkansas. Sage is approximately six miles south of Zion. Joswiak made a visual and tactile inspection of the envelope. Based on the inspection of the letter and information from the confidential informant, Joswiak obtained a search warrant to search defendant and her residence. In issuing the search warrant Magistrate Kent Giffe stated he relied upon Kamatchus' sworn testimony that the confidential informant who provided evidence to him had given reliable information several times during the past year.

On March 18, 1985, the envelope was delivered to defendant's residence under police surveillance after Joswiak obtained the search warrant. Joswiak testified later he saw defendant remove the envelope from the mailbox. Subsequently police searched defendant and her residence. A card containing Dilaudid pills was found in defendant's pants pocket. Pursuant to the search warrant the police also seized one bottle of Phenegran with codeine, plastic bags containing marijuana, various drug paraphernalia, syringes and a money order receipt for $180 to Dennis Paglia. After the seized materials were analyzed and identified, defendant was arrested and charged with possession of marijuana, a schedule I controlled substance; Dilaudid, a schedule II controlled substance, and Phenegran with codeine, a schedule V controlled substance.

Defendant filed a pretrial motion to suppress evidence seized at defendant's residence which the trial court denied. Prior to trial defendant filed a list of witnesses which might be called at trial. The state followed with a motion in limine stating that one of defendant's witnesses might be the confidential informant and requesting that defense counsel be precluded from questioning witnesses concerning information given to police. The state also pointed out in its motion that the trial court had already upheld the legality of the search warrant, therefore, the reliability of the informant was not an issue. The trial court did not order the state to reveal the identity of its informant. However, the trial court did rule the defendant could call the person believed to be the informant and question that person about involvement with these charges. The trial court provided that if proper foundation was laid defendant could then present impeachment evidence and evidence to support an entrapment defense based on the informant's out-of-court statements.

At trial defense counsel questioned Roxanne Baker, who defendant believed to be the confidential informant. Baker was a former employee who defendant had fired and had done baby sitting in defendant's home. The state objected when defense counsel asked Baker whether she told Detective Kamatchus about defendant receiving Dilaudid shipments. In camera, the trial court ruled it would allow defendant's line of questioning to lay a foundation for the defense's theory that defendant was set up by a scorned former employee, who in retaliation for having lost her job, decided that she would see to it that Miss Nelson was prosecuted for a criminal offense. The trial court also ruled if defense counsel did not produce such foundation the state would be allowed to renew its objection and move to strike that testimony. Defense counsel resumed examination of Baker. The state objected and was overruled by the trial court and did not move to strike Baker's testimony.

The jury returned a verdict of guilty on possession of Dilaudid and marijuana. This appeal followed.

## I.

Our scope of review in this action is on assigned error only. Iowa R.App.P. 4. The trial court is vested with broad discretion concerning the admission of evidence at trial. *State v. Hightower*, 376 N.W.2d 648, 651 (Iowa App.1985); *State v. Thompson*, 326 N.W.2d 335, 337 (Iowa 1982). The trial court's rulings on admissibility are not wholly reviewable on appeal and will be disturbed only upon a clear abuse of discretion. *Hightower*, 376 N.W.2d at 651. Abuse will be found only where the discretion "was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Thompson*, 326 N.W.2d at 337 (quoting *State v. Morrison*, 323 N.W.2d 254, 256 (Iowa 1982)).

## II.

Defendant contends the trial court abused its discretion in refusing to compel disclosure of the identity of the confidential informant who supplied a police officer with information which was a basis for a subsequent search warrant for defendant and her residence. Defendant argues disclosure of the informant's identity was necessary and material to the defense's theory of entrapment.

■ The state is privileged to withhold the identity of a person who furnishes information relating to violations of the law. *State v. Luter*, 346 N.W.2d 802, 810 (Iowa 1984), *cert. denied* 469 U.S. 830 (1984), 105 S.Ct. 116, 83 L.Ed.2d 59; *State v. Webb*, 309 N.W.2d 404, 410 (1981). This privilege is premised upon public interest in maintaining the flow of information essential to law enforcement. *Webb*, 309 N.W.2d at 410 (quoting *State v. Lamar*, 210 N.W.2d 600, 602–03 (Iowa 1973)). Other reasons for this privilege of nondisclosure include the following:

A genuine privilege, on ... fundamental principle ... must be recognized for the identity of persons supplying the government with information concerning the commission of crimes. Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.

That the government has this privilege is well established, and its soundness cannot be questioned.

8 Wigmore, *Evidence* § 2374, at 761–62 (McNaughton rev.1961).

To be weighed against that state interest, however, is the defendant's right of access to facts necessary for the preparation and presentation of a defense as well as defendant's right to a fair trial. *Id.*

■ The facts to be considered in this balancing process are:

1. Nature of the offense charged;
2. Defenses raised; and
3. Potential significance of an informant's testimony.

*Webb*, 309 N.W.2d at 410; *Lamar*, 210 N.W.2d at 602.

■ A defendant seeking to overcome the state's policy of protecting an informant's identity has the burden of proving the informant is likely to have evidence bearing on the merits of the case. *State v. Sheffey*, 243 N.W.2d 555, 559 (Iowa 1976). Any determination whether an informant's identity is to be revealed requires a balancing of these countering interests in light of the facts and circumstances peculiar to each case. *State v. York*, 256

N.W.2d 922, 925 (Iowa 1977). Mere speculation an informant may be helpful to the defendant's case is not enough to carry the burden and overcome the public interest in protection of the informant. *Sheffey*, 243 N.W.2d at 559. In addition, the mere assertion of an entrapment defense is not sufficient to swing the balance in defendant's interest. *State v. York*, 256 N.W.2d 922, 924 (Iowa 1977).

■ When informants are present at the scene of the crime or participate in the offense, their identity should ordinarily be divulged. *Roviaro v. United States*, 353 U.S. 53, 64, 77 S.Ct. 623, 630, 1 L.E.2d 639, 647 (1954); *Luter*, 346 N.W.2d at 810; *Webb*, 309 N.W.2d at 410. In this context the individual is not merely an *informant*, he is a *witness* to the event. *Luter*, 346 N.W.2d at 810. "In such cases disclosure will almost always be material to the defendant's defense, especially when a defense such as *entrapment*, misidentification or alibi has been asserted." *Sheffey*, 243 N.W.2d at 558 (emphasis added).

In the instant case defendant had two theories by which she could have met her burden to compel discovery of the informant's identity. She could have produced evidence to show the defendant's interest in disclosure outweighed the state's policy to protect informants or she could have produced evidence that the informant was a witness or participant in the offense. We find defendant did not meet that burden on either theory. Thus, we conclude the trial court did not abuse its discretion by refusing to compel disclosure.

### A.

■ In balancing the defendant's and the state's interest on disclosure of the informant we first consider the entrapment defense which defendant has raised. Defendant filed a list of six witnesses to establish the entrapment defense. The state countered with a motion in limine to limit defendant's questioning because one of the witnesses might be the informant.

At that point the burden shifted to defendant to produce some evidence supporting her defense and the informant's participation in the offense to outweigh the state's argument it needed to protect the informant's safety and prevent the defendant from engaging in a "fishing expedition" in examining the defense witnesses. During the pretrial hearing, however, defendant produced no evidence to support the entrapment defense beyond mere allegations that three witnesses might testify that Roxanne Baker, who defendant believed to be the informant, made certain statements after being fired from her employment by defendant. Defendant produced no depositions, affidavits or other evidence to support her allegations that Baker was likely to have evidence material to defendant's entrapment defense. In addition, at trial defendant produced no showing Baker set her up or even had the means to retaliate against the defendant. By failing to produce such evidence to support the entrapment defense, defendant did not meet her burden of proof on disclosure and the trial court was correct in refusing to compel disclosure of the informant's identity.

### B.

■ Defendant next argues the trial court abused its discretion because it placed a limitation on allowance of evidence at trial about the informant's identity. Defendant contends the trial court's ruling denied defendant the ability to identify the informant and therefore effectively denied defendant the opportunity to prove her entrapment defense by impeaching the supposed informant. We find defendant's argument is without merit and not supported by the evidence.

Prior to trial the trial court heard arguments on witness lists and limine motions and ruled as follows:

THE COURT: ... The State has today filed a Motion in Limine which basically seeks to limit the defense from going on a fishing expedition in this jury trial. The jury trial is not the time to conduct discovery. That is what discovery depo-

sitions are for, motions to disclose; and there are other remedies available to the defense prior to trial. The Defendant resists the State's Motion in Limine on the basis that he plans on calling such witnesses as Kevin Miller, Robin Kempf, and others to testify with regard to out-of-court statements by the alleged informant in this case. *Those statements are nothing but hearsay, and this Court will limit their introduction into evidence on pure hearsay grounds. Until Mr. Hoglan puts forth the person that he believes to be the informant and interrogates that individual with regard to her involvement in these charges, then and only then will he be allowed to impeach that witness by means of out-of-court statements to other witnesses.* Any other fashion, it is pure hearsay; and the defense is not going to be allowed to lead this jury panel down the garden path with regard to what may and may not be said by an individual who has not been called by the defense to testify in this case. *Impeachment can only occur when that witness whose statements are sought to be used is brought into court and allowed to testify; and so that's the order. Mr. Hoglan, you're going to have to put on the person you think is the informant and then you may be able to use the out-of-court statements that Mr. Miller and Miss Kempf and all of these other individuals say she made.*

MR. HOGLAN: That's fine, your Honor. That's one of the reasons I listed her. I did not know if the hearsay objection would come up. That's why I listed her. I will probably call Roxanne Baker first.

THE COURT: If you are planning to use Mr. Miller and the rest of these people with regard to testimony as to what she may or may not have said concerning Miss Nelson, you better lead with her.

MR. HOGLAN: I understand that.

THE COURT: And to that extent, *if he can lay a foundation of entrapment of Vicki Jo Nelson with regard to count two of the Trial Information within those perimeters, he's free to do so. He is free to defend against this action; but he's going to have to play by the rules of evidence in this case; and that means leading with the informant.* (emphasis added).

In addition, during defendant's examination of Roxanne Baker the trial court, in camera, overruled the state's objections regarding questions dealing with Baker's conversations with Detective Kamatchus:

THE COURT: The question as last phrased by Mr. Hoglan was whether or not this witness ever spoke to Officer Kamatchus. It is not actually any longer a question of disclosure of an informant. This witness has been subpoenaed by the Defendant apparently to lay a foundation for the defense's theory that Miss Nelson was set up by a scorned former employee when in retaliation for having lost her job decided that she would see to it that Miss Nelson was prosecuted for a criminal offense which she is now on trial for in this court; and to the extent that the Defendant has established that the firing occurred and that there were prior contacts between Miss Baker and Miss Nelson, *I think he should be at least allowed to pose the questions as to what role Miss Baker played in these charges being filed against the Defendant. I'm going to allow the line of interrogation.* However, with this caveat, that should the interrogation of Miss Baker along those lines result in nothing, the State will be allowed to renew its objection and move to strike that testimony from the record with an admonition to the jury to disregard. (emphasis added).

It is apparent from the record the trial court did not impinge defendant's right to prove Baker was the informant or limit the defendant's right to impeach Baker as a scorned former employee who set up the defendant in retaliation for being fired. Defendant was free to question and impeach Baker in order to prove her entrapment defense as long as proper foundation was laid. Iowa R.Evid. 607, 608(b). Hear-

say rules and foundation requirements apply to all trial counsel regardless of whether an informant is involved or disclosed. As such, regardless of whether the trial court compelled disclosure of the informant in the instant case, defendant still had to lay a foundation to overcome exclusion of the informant's out-of-court statements, prior inconsistent statements and other impeachment evidence. Iowa R.Evid. 802, 801(d)(1).

 We also find without merit defendant's argument that the very fact the trial court provided for an objection by the state and striking of testimony if Baker did not provide the information sought by defendant denied defendant the right to impeach the supposed informant and was an abuse of discretion. In essence, defendant contends the trial court would have abused its discretion if it struck any testimony of the defense's witnesses.

We point out it is always within the trial court's discretion to determine the relevancy of evidence. Iowa R.Evid. 401 committee comment; *Carson v. Mulnix,* 263 N.W.2d 701, 706 (Iowa 1978). Evidence which is not relevant is not admissible. Iowa R.Evid. 402. The Iowa common law definition of relevance also includes the concept of "materiality." Iowa R.Evid. 401 committee comment; *State v. Clay,* 213 N.W.2d 473, 477 (Iowa 1973). We find the trial court did not abuse its discretion by providing for an objection by the state. In addition, defendant was not prejudiced by the trial court's provision because the trial court overruled the state's objections to defendant's examination of Baker and because the state did not move to strike Baker's testimony.

### C.

Finally, defendant argued the informant's identity should have been divulged because the supposed informant, Roxanne Baker, witnessed or participated in the offense for which defendant was charged. Defendant argues Baker participated in the offense by arranging the shipment of Dilaudid to defendant and then setting de-

fendant up by informing the police about the forthcoming shipment. At the pretrial hearing, however, defendant produced no evidence Baker either had access to Dilaudid or arranged to have Dilaudid shipped to defendant. In addition, defendant did not produce evidence at trial to prove Baker set up defendant. Thus, defendant was not entitled to disclosure of the informant's identity on that theory. *Luter,* 346 N.W.2d at 810; *Webb,* 309 N.W.2d 410.

We, therefore, agree the trial court did not abuse its discretion by refusing to compel disclosure of the identity of the confidential informant.

AFFIRMED.